Filed 6/8/21  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>EARL JAMES THOMPSON,<br><br>        Defendant and Appellant. | C090913<br><br>(Super. Ct. No. F-2013-3824) |

The trial court sentenced defendant Earl James Thompson to 10 years in state prison, awarded victim restitution in the amount of $2,007,582.10, and imposed various fines and fees.  On appeal, defendant argues the trial court:  (1) imposed victim restitution without substantial evidence; (2) should have stayed the sentences on two of his perjury counts under Penal Code section 654[1]; and (3) failed to conduct an ability to pay hearing

---

[1]  Undesignated statutory references are to the Penal Code.

1

on the fines and fees, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We will reverse a portion of the restitution order, stay the sentences for three of defendant's perjury convictions, and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant's contractor's license was revoked and he later engaged in a scheme with codefendants Valery Thompson and James Russell to form a contracting business, Russell Thompson Construction (Russell/Thompson), and bid on public works projects. Although his license had been revoked, defendant oversaw operations at Russell/Thompson, signed documents on its behalf, and served as its designated payroll officer.

In 2009, Brown Construction received a contract to be a general contractor managing the construction of dormitory housing. Brown Construction signed a contract with a company called 84 Lumber to supervise the framing work for the project, and 84 Lumber entered into a contract with Russell/Thompson to perform the work. The value of the contract between 84 Lumber and Russell/Thompson was $1,536,380. In the contract, defendant agreed to pay the legally required prevailing wage rate to his employees, which included amounts paid for fringe benefits such as health benefits or pension, and training fee payments to the state for apprenticeship programs.

Russell/Thompson worked on the project from September 2009 to February 2010, when it was removed by Brown Construction. While working on the project, defendant misclassified employees to pay them less than the required prevailing wage. He signed and submitted certified payroll records to the Department of Industrial Relations misclassifying the employees and falsely verifying he paid prevailing wage rates. Defendant did not pay for fringe benefits or training fees for his employees. Defendant also underreported employee wages to the State Compensation Insurance Fund to obtain lower workers' compensation insurance premiums.

2

The Department of Industrial Relations received complaints about Russell/Thompson and began an investigation. Ultimately, the department issued a civil wage and penalty assessment against Russell/Thompson, 84 Lumber, and Brown Construction for approximately $1.3 million. The parties settled the assessment for $726,063.24, which was paid by 84 Lumber.

The prosecution charged defendant with conspiracy to defraud (§ 182, subd. (a)(4); count 1); receipt of a portion of wages of a workman (Lab. Code, § 1778; count 2); grand theft (§ 487, subd. (a); counts 3 & 4); false and fraudulent statements for the purpose of reducing the cost of workers' compensation insurance (Ins. Code, § 11880, subd. (a); count 5); perjury (§ 118, subd. (a); counts 6 through 26); and contracting without a license (Bus. & Prof. Code, § 7028, subd. (a); count 27). The information also alleged enhancements for losses exceeding $200,000 and $1,300,000 (former § 12022.6, subd. (a)(2)-(3)), an aggravated white collar crime enhancement for taking more than $500,000 (§ 186.11, subd. (a)(1)-(2)), and alleged the statute of limitations was tolled for various counts. Defendant pleaded no contest to all counts without admitting the enhancements. The parties agreed to a bench trial on the enhancements, sentencing, and the amount of restitution.

*A. Trial Testimony*

At trial, the prosecution introduced testimony from Amie Bergin, a deputy labor commissioner for the Labor Commissioner's Office. Bergin testified she investigated defendant's involvement in the Russell/Thompson construction project after her office received a complaint from one of his employees. She interviewed defendant's employees and reviewed payroll reports he had submitted to the Department of Industrial Relations. She determined defendant had misclassified his employees as laborers, rather than carpenters, even though the employees were doing carpentry work, and was paying them a correspondingly lower rate than was required.

3

To determine how much defendant owed in employee wages, Bergin calculated what should have been paid based on the appropriate prevailing wage rate. She then obtained bank records reflecting payments that had been made to employees and credited those amounts to defendant. She also interviewed defendant's employees to determine whether they had ever been paid in cash and gave defendant credit for those amounts, as well. Ultimately, she concluded the employees were underpaid by $633,199.55.

Defendant was not paying the appropriate prevailing wage rate, did not pay overtime or make training fund contributions, and filed inaccurate payroll records. Bergin explained that prevailing wage contracts required employers to make contributions into a state apprenticeship program to provide for the training of future skilled laborers, but that defendant had not made the required training fee payments. She explained that the fees were paid to a state fund, not to the employees themselves. She calculated defendant should have paid $13,570.69 in training fees based on the number of hours worked on the project. Employers are also required to pay fringe benefits, or "benefits outside of the hourly rate that are paid to the benefit of the worker; health and welfare, pension, vacation." Defendant had not made any fringe benefit payments.

Bergin also noted the value of the contract between Russell/Thompson and 84 Lumber was $1.12 million for framing labor, $370,000 for panels, and $46,380 for siding labor, or $1,536,380 in total.

Three former Russell/Thompson employees who had worked on the project testified to the pay they had received, which was below the prevailing wage rates to which they were entitled. Two of the employees testified they sometimes received payment in cash. All three employees testified they later received payments from the state for backpay. John Berg, a foreman on the project, similarly testified that employees sometimes received cash payments, which were approved by defendant.

Kathryn McGuire, the vice president of operations at Brown Construction, testified Russell/Thompson was removed from the project because Russell/Thompson

4

was not paying its employees correctly and was falling behind schedule on the project. Brown Construction removed 84 Lumber from the project and paid the last week of wages for Russell/Thompson's employees after Russell/Thompson was removed. Brown Construction also paid claims from Russell/Thompson suppliers. In total, Brown Construction paid $233,610 to cover Russell/Thompson expenses.

Jerri Shaul, an investigator at the State Compensation Insurance Fund, testified Russell/Thompson owed an additional $355,011.33 to the fund based on defendant's underreporting of wages.

### B. Restitution Hearing

In briefing, the prosecution requested restitution in five different categories: $359,011.43 to the State Compensation Insurance Fund for underpayment of worker's compensation insurance premiums, $13,570.69 for the failure to contribute to the state training fund, $633,199.55 for unpaid wages owed to defendant's employees, $1,536,380 for the fraudulent procurement of the contract with 84 Lumber, and $233,610.47 to Brown Construction for payments Brown Construction was required to make to Russell/Thompson's employees and suppliers. Defendant argued there should be no restitution, asserting the employees had been paid everything they were promised and had only complained about his employment practices because they had been promised money. Defendant also blamed 84 Lumber and Brown Construction for the employee misclassifications.

Before it announced its decision, the court explained it had reviewed the documents and exhibits submitted during trial, as well as the preliminary hearing transcript and briefs submitted by the parties. The parties submitted on the briefing and did not offer additional argument. The court found the statute of limitations tolling enhancements under section 803, subdivisions (b) and (d) true, but found the enhancements under section 803, subdivision (c) not true. The court found not true the

5

enhancements for losses exceeding $200,000 and $1,300,000, as well as the aggravated white collar crime enhancement.

The trial court further ordered restitution, stating: "With regard to restitution, I do find that [defendant] was the person in control of Russell Thompson and Associates, and I do find that he is responsible to pay restitution, which the Court will order. Restitution is ordered in the following amounts: [¶] To [the] State [Compensation Insurance] Fund, the Court orders $359,011.43; restitution for employee wages, $633,199.55; restitution for training fees, $13,570.69. Restitution under the contract with 84 Lumber, I have reduced that amount to $768,190. I find that 84 Lumber has some culpability and responsibility; it is not blameless in this entire fiasco. [¶] Restitution for the Brown payments to employees of Russell Thompson and the suppliers to finish the job, $233,610.47. The total restitution, when I add these numbers up, is $2,007,582.10." Defense counsel did not object to the court's order.

*C. Sentencing*

At the sentencing hearing, the court sentenced defendant to a total aggregate sentence of 10 years, composed as follows: five years for false and fraudulent statements for the purpose of reducing the cost of worker's compensation insurance (count 5); consecutive terms of eight months each for conspiracy to defraud (count 1), receipt of portion of wages of a workman (count 2), and grand theft (count 4); and consecutive terms of one year each for perjury counts 9, 25, and 26. The court imposed a concurrent term of 180 days for contracting without a license (count 27).

The court imposed a three-year sentence for grand theft (count 3) and stayed execution of the sentence under section 654. The court further imposed a four-year sentence for each remaining perjury count (counts 6 through 8 & counts 10 through 24) and stayed execution of the sentences under section 654. The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), along with a restitution collection fee of $30 and a parole revocation fine of $300 (§ 1202.45), which it suspended pending parole

6

revocation. Finally, the court imposed a court operations assessment of $40 per conviction (§ 1465.8) and a court facilities assessment of $30 per conviction (Gov. Code, § 70373). Defense counsel did not object to the restitution fine or assessments or otherwise raise defendant's ability to pay them.

## DISCUSSION

### I

### *Victim Restitution*

Defendant contends the trial court abused its discretion when it awarded restitution as to training fees, employee wages, and contract restitution.[2] For each category, defendant argues the court did not sufficiently identify the victim to whom restitution was owed when it rendered its order, as required by section 1202.4, subdivision (f)(3). Defendant also challenges the calculations used to reach the employee wage and contract restitution figures.

The People argue defendant forfeited any argument concerning victim restitution because defense counsel did not object, either when the court rendered the restitution award or later at the sentencing hearing. Defendant responds that he submitted briefing contesting the amount of restitution, which the trial court considered in issuing its order. Defendant did not, however, ever challenge the adequacy of the trial court's identification of victims in the restitution order. Such an objection, if raised at the restitution hearing, could have easily been resolved by the trial court. (*People v. Scott* (1994) 9 Cal.4th 331, 351-353; *id.* at p. 353 ["Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention."].) While defendant did not forfeit his arguments concerning the amount of the restitution, his challenge to the court's

---

[2] Defendant limits his appeal to these three categories of restitution and does not challenge the restitution awards to Brown Construction or the State Compensation Insurance Fund.

identification of the victims is waived. (*People v. Anderson* (2010) 50 Cal.4th 19, 26, fn. 6; *People v. Gonzalez* (2003) 31 Cal.4th 745, 755; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1071-1072.)

Even were defendant's argument not forfeited, the victim for each category is readily ascertainable from the record. Restitution for "employee wages" is intended to compensate employees for backpay, "[r]estitution under the contract with 84 Lumber" is intended to compensate 84 Lumber, and restitution for failure to make training fee contributions is intended to compensate for missing payments to the state training fund, which was established by testimony at the restitution trial. Each of these entities qualifies as a "victim" who could receive restitution. (§ 1202.4, subd. (k).)

With respect to the employee wage and contract restitution awards, defendant further contends the trial court erred in calculating the amounts awarded. Defendant argues the court did not account for amounts paid to employees in cash for the employee wage award. Defendant also claims the court arbitrarily calculated the damages for the contract restitution award and the award was not founded on any actual economic loss. We disagree as to the employee wage award, but agree with respect to the contract restitution award.

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." (§ 1202.4, subd. (f)(3).) "[D]irect victims of crime have a statutory right to restitution on the full amount of their losses without regard to the full or partial recoupment from other sources (except the state Restitution Fund)." (*People v. Baker* (2005) 126 Cal.App.4th 463, 468.)

8

At a victim restitution hearing, the People may make a prima facie case for restitution based on the victim's testimony or on some other claim or statement as to the amount of his or her economic loss. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) Once the People have made a prima facie case for restitution, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Ibid.*; see *People v. Giordano* (2007) 42 Cal.4th 644, 664 (*Giordano*).) The standard of proof at the hearing is preponderance of the evidence. (*Millard,* at p. 26.)

We review the trial court's restitution order for abuse of discretion. (*Giordano, supra*, 42 Cal.4th at p. 663.) We presume the judgment correct, and to set it aside an appellant must affirmatively show error. (*Id.* at p. 666.) "No abuse of . . . discretion occurs as long as the determination of economic loss is reasonable, producing a nonarbitrary result." (*Id.* at p. 665.) If the court used a rational method of determining the victim's loss, so that the order is not arbitrary or capricious, we will uphold the order. (*Ibid.*; *People v. Garcia* (2011) 194 Cal.App.4th 612, 617.) " ' "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]' " (*People v. Millard, supra*, 175 Cal.App.4th at p. 26.)

The court awarded $633,199.55 in restitution to defendant's employees for employee wages that should have been paid. The award was based on expert testimony by Amie Bergin, a deputy labor commissioner for the Labor Commissioner's Office, who investigated employee complaints into defendant's business. She reached the figure by determining what should have been paid, based on the duties the employees had been performing and the hours worked. Then, using defendant's bank records, she credited defendant with the amounts that had actually been paid to employees. Finally, she interviewed employees to determine whether they had been paid in cash and credited

9

those amounts as well. Contrary to defendant's assertion that Bergin assumed all cash payments were going directly to defendant, rather than his employees, Bergin explained she gave Russell/Thompson credit for cash payments: "I gave the contractor credit for the copies of checks that I received. . . . And where the workers told me that they were paid in cash, I gave them credit for that as well." Sufficient evidence supported the employee wage award.

As to the contract restitution award, the contract between Russell/Thompson and 84 Lumber was admitted into evidence, and showed 84 Lumber agreed to pay Russell/Thompson $1,536,380. The trial court then concluded an award for the full value of the contract was not justified and awarded only half of its value, saying "84 Lumber has some culpability and responsibility" and "is not blameless in this entire fiasco."

In *People v. Petronella* (2013) 218 Cal.App.4th 945, the appellate court considered whether victim restitution could be reduced based on the victim's failure to exercise due diligence in its conduct. In *Petronella*, the defendant was convicted of multiple counts of making false and fraudulent statements to obtain favorable workers' compensation insurance premiums. (*Id.* at p. 950.) The prosecution sought victim restitution for the State Compensation Insurance Fund, and the trial court reduced the requested award, finding the State Compensation Insurance Fund "contributed to the amount of its loss of premiums by failing to cancel defendant's policy . . . when it first discovered the possibility defendant was intentionally underreporting his payroll." (*Id.* at p. 971.) Reviewing cases applying comparative fault principles to victim restitution awards, the appellate court concluded a victim restitution award may be reduced based on comparative fault where an offense "required only proof of criminal negligence." (*Ibid.*) But, " ' "a party who commits intentional misconduct should not be entitled to escape responsibility for damages based upon the negligence of the victim." ' " (*Ibid.*) Thus, it was not permissible to consider the victim's negligence as "a relevant factor in

10

determining its right to or the amount of restitution" because the defendant was charged with intentional fraud. (*Ibid.*)

Here, defendant was convicted of grand theft with respect to the 84 Lumber contract, which requires fraudulent intent, rather than merely criminal negligence. (*People v. Smith* (2009) 179 Cal.App.4th 986, 1004.) Whether 84 Lumber's own actions contributed to its damages was thus a factor that could not be used to reduce the restitution award. Because the trial court relied on this factor to calculate the victim restitution award, the trial court "abused its discretion by not 'employ[ing] a method that is rationally designed to determine the . . . . victim's economic loss.' (*People v. Giordano, supra*, 42 Cal.4th at pp. 663-664.)" (*People v. Petronella, supra*, 218 Cal.App.4th at p. 973.) We conclude this portion of the restitution order must be reversed and will remand the matter for further proceedings.

II

*Section 654*

Defendant argues the sentences for perjury counts 25 and 26 should have been stayed under section 654. In particular, defendant claims the trial court implicitly determined that perjury counts 9 through 26 all had the "same objective" when it stayed counts 10 through 24 but imposed a consecutive sentence for count 9. Each of the counts implicated substantially identical actions: the submission of false certified payroll records to the Department of Industrial Relations. Thus, the argument goes, "there is no meaningful distinction between [defendant's] actions in counts 10 through 24," and the sentence for counts 25 and 26 should be stayed, as well. We agree the sentences for counts 25 and 26 must be stayed, but conclude count 9 should have been stayed, as well, because of the other counts for which defendant was sentenced.

"Section 654 . . . ' "precludes multiple punishment for a single act or for a course of conduct comprising indivisible acts. 'Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.' [Citations.] '[I]f all the

11

offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' [Citation.]" [Citation.]' . . . [¶] Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) If the trial court does not stay a sentence pursuant to section 654, and offers no factual basis for its decision, we presume the court found that the defendant harbored a separate intent and objective for each offense. (*Jones,* at p. 1147.) "We review the trial court's findings 'in a light most favorable to the respondent and presume in support of the order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' " (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Here, the trial court imposed a consecutive sentence for count 2 (receipt of portion of wages of a worker), which was based on defendant's scheme to avoid paying his employees the prevailing wage and other benefits. Count 2 encompassed a series of actions over time; the prosecution alleged it occurred over the life of the project, rather than charging separate counts for each paycheck defendant underpaid his employees. As part of the scheme, defendant systematically misclassified his employees to pay them lower prevailing wage rates.

These misclassifications were accomplished using certified payroll records. Each payroll record included an affidavit stating employees were paid the prevailing wage, which defendant signed under penalty of perjury, and assigned each employee to a classification. The perjury counts at issue--counts 9 through 26--were each tied to the dates defendant signed the affidavits. Each act of perjury effectuated defendant's overall wage theft scheme by misclassifying employees; the payroll records were simply the means by which defendant accomplished the misclassifications. The objective in signing each affidavit was thus indistinguishable from defendant's overall goal of diverting employee wages to himself. The trial court's implicit finding that counts 9, 25, and 26

12

involved separate intents and objectives by defendant is thus unsupported by substantial evidence.

The People argue *People v. Williams* (1980) 106 Cal.App.3d 15, in which an appellate court declined to stay sentences for 13 counts of perjury and 10 counts of welfare fraud, compels a different result. There, however, each of the counts was "dealing with separate claims and individuals," unlike the present case, where each of the perjury counts formed one part of a greater sequence of conduct for which defendant was punished in a separate count. (*Id.* at p. 20.) Because the perjury counts were incidental to the conduct for which defendant was punished in count 2, we conclude counts 9, 25, and 26 must be stayed.

## III

### *Ability to Pay*

Relying on *People v. Dueñas, supra*, 30 Cal.App.5th 1157, defendant argues the trial court violated his due process rights when it imposed a $300 restitution fine, a suspended $300 parole revocation fine, a $1,080 court operations assessment, and a $810 court facilities assessment without making findings of his ability to pay. Defendant acknowledges he did not object to the imposition of the fines and fees at sentencing, but urges us to reach the issue for a variety of reasons. We decline to do so.

The trial court sentenced defendant on November 13, 2019. Even though *Dueñas* was published before defendant's sentencing hearing, defendant did not claim an inability to pay. He therefore forfeited his argument. (See *People v. Trujillo* (2015) 60 Cal.4th 850, 858-859 [the constitutional nature of the defendant's claim regarding her ability to pay did not justify a deviation from the forfeiture rule]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [ability to pay restitution fine is forfeited by failure to object at the sentencing hearing]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [forfeiture rule applies to defendant's claim that restitution fine amounted to an unauthorized sentence based on his

13

inability to pay]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [failure to object to maximum restitution fine on ground of inability to pay forfeits *Dueñas* issue].)

Defendant argues his claim is not forfeited because the trial court did not understand it had the discretion to strike or reduce his fines and fees, and "[w]here . . . . a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination." (*People v. Downey* (2000) 82 Cal.App.4th 899, 912.) Nothing in the record supports defendant's contention the trial court misunderstood the law or the scope of its sentencing discretion and "we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion." (*People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527.) And, defendant's contention his claim was not forfeited because it implicates important constitutional rights is unsupported by binding case law, which establishes that sentencing-related fees and fines do not fall within the category of rights exempted from the forfeiture rule. (*People v. Trujillo, supra*, 60 Cal.4th at pp. 858-859.)

Defendant contends his failure to object in the trial court does not forfeit his challenge because the imposition of fines and fees exceeded the jurisdiction of the trial court, resulting in an unauthorized sentence. (See *People v. Scott, supra*, 9 Cal.4th 331, 354 [sentence is " 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case"].) An " ' "unauthorized sentence" ' " may be corrected on appeal absent an objection because it presents pure questions of law independent of any factual issues. (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Here, the question of whether fines and fees may be imposed requires a factual determination about defendant's ability to pay. Therefore, the imposed fines and fees do not result in an unauthorized sentence that may be corrected on appeal without an objection in the trial court.

Anticipating our conclusion that he forfeited his claim, defendant contends his trial counsel was constitutionally ineffective for failing to object to the imposition of the fines

14

and fees without a hearing on his ability to pay. A claim of ineffective assistance of counsel requires defendant to show by a preponderance of the evidence that (1) counsel's performance fell below the objective standard of prevailing professional norms, and (2) defendant was prejudiced by counsel's failing. (*Strickland v. Washington* (1984) 466 U.S. 668, 688-695 [80 L.Ed.2d 674].) On direct appeal, a conviction will be reversed for ineffective assistance "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record is silent as to why defense counsel raised no *Dueñas* objection. Counsel focused on securing probation for defendant or, alternatively, a lower prison sentence. He also highlighted defendant's family life, including defendant's teenage daughter, and contrasted defendant's treatment with the more lenient treatment of other parties involved in the housing project. Counsel may have believed focusing on these issues would provide more meaningful assistance to defendant than arguing for a reduction in the assessed fines and fees. The court had also heard testimony that defendant had recently been constructing a "multimillion dollar apartment complex" and had, at one point, purchased an airplane. Defense counsel may have determined that, given this testimony, a claim that defendant could not pay the statutory minimum restitution fine would lack credibility and undermine his other arguments. We cannot conclude defense counsel provided ineffective assistance based on his failure to object.

DISPOSITION

The sentences on counts 9, 25, and 26 are stayed under section 654. The restitution order is reversed to the extent it awarded contract restitution to 84 Lumber and

the matter is remanded to the trial court for further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.



/s/
HOCH, J.



We concur:



/s/
MAURO, Acting P. J.



/s/
DUARTE, J.